## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

THE WESTERN UNION COMPANY,
a corporation, also doing business as
Western Union Financial Services, Inc.,
and through other subsidiaries and affiliates,

    Defendant.

Civil Action No. 1:17-CV-0110

(Chief Judge Conner)

FILED
HARRISBURG, PA

JAN 2 0 2017

PETER WELSH, Acting.
MARIA E. ELKINS, CLERK
Per _____

### STIPULATED ORDER FOR PERMANENT INJUNCTION
### AND FINAL JUDGMENT

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its

Complaint for Permanent Injunctive and Other Equitable Relief ("Complaint"),

pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. § 53(b), and the Telemarketing and Consumer Fraud and Abuse Prevention

Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108. The Commission and

Defendant The Western Union Company ("Western Union") stipulate to the entry

of this Stipulated Order for Permanent Injunction and Final Judgment ("Order") to

resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

1

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges Defendant with engaging in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the Telemarketing Act, 15 U.S.C. §§ 6101-6108, and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in the course of providing money transfer services through its worldwide money transfer network.

3.      Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.      Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5.      Defendant and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For purposes of this Order, the following definitions apply:

A.      **"Cash-to-cash money transfer"** means the transfer of the value of cash from one person in one location to a recipient (payee) in another location that is received in the form of cash.

2

B.     **"Cash reload money transfer"** means the transfer of the value of cash from one person in one location to a recipient (payee) in another location that is received in a form that makes it possible for a person to convert the cash into an electronic form that can be used to add funds to a general-use prepaid card or an account with a payment intermediary.

C.     **"Consumer"** means any person, worldwide, who initiates or sends a money transfer.

D.     **"Defendant"** means The Western Union Company, also doing business as Western Union Financial Services, Inc., and through its other subsidiaries and affiliates, and its successors and assigns.

E.     **"Elevated fraud countries"** means any country in which the principal amount of money transfers that are the subject of fraud complaints, received by Defendant from any source, represents one (1) percent or more of the principal amount of fraud complaints worldwide received by Defendant, for either money transfers sent or received in that country, determined on a  quarterly basis, *provided that* once a country is determined to be one of the elevated fraud countries, it shall continue to be treated as such for purposes of this Order.

F.     **"Elevated fraud risk agent location"** means any Western Union agent location that has processed payouts of money transfers associated with:

3

1.  Five (5) or more fraud complaints for such agent location, received by Defendant from any source, during the previous sixty (60) day period, based on a review of complaints on a monthly basis; and fraud complaints, received by Defendant from any source, totaling five (5) percent or more of the total payouts for such agent location in numbers or dollars in a sixty (60) day period, calculated on a monthly basis; or

2.  Fifteen (15) or more fraud complaints for such agent location, received by Defendant from any source, during the previous sixty (60) day period, based on a review of complaints on a monthly basis.

G.   **"Fraud-induced money transfer"** includes any money transfer that was induced by, initiated, or sent as a result of, unfair or deceptive acts or practices and/or deceptive or abusive telemarketing acts or practices.

H.   **"Front line associate"** means the employee of the Western Union agent responsible for handling a transaction at the point of sale for a consumer or a recipient (payee) of a money transfer, including by initiating, sending, or paying out the money transfer.

I.   **"Money transfer"** means the sending of money (in cash or any other form, unless otherwise stated) between a consumer in one location to a recipient (payee) in another location using Defendant's money transfer service, and shall include

4

transfers initiated or sent in person, online, over the telephone, using a mobile app, or through whatever platform or means made available. The term "money transfer" does not include Defendant's bill or loan payment services, or purchases of foreign currency conversions or options contracts from Defendant.

J.    **"Person"** includes a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

K.    **"Seller"** means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services in exchange for consideration.

L.    **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer.

M.    **"Telemarketing"** means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the TSR.

N.    **"Western Union agent"** means any network agent, master agent, representative, authorized delegate, independent agent, super-agent, national account agent, key account agent, strategic account agent, sub-representative,

subagent, or any location, worldwide, authorized by Defendant to offer or provide any of its money transfer products or services.

## I.

## PROHIBITED BUSINESS ACTIVITIES

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting, offering for sale, or providing money transfer services, are permanently restrained and enjoined from:

A.      Transmitting a money transfer that Defendant knows or reasonably should know is a fraud-induced money transfer, or paying out a money transfer to any person that Defendant knows or reasonably should know is using its system to obtain funds from a consumer, directly or indirectly, as a result of fraud;

B.      Providing substantial assistance or support to any seller or telemarketer that Defendant knows or reasonably should know is accepting from a U.S. consumer, directly or indirectly, a money transfer as payment for goods or services offered or sold through telemarketing;

C.      Failing to do any of the following in connection with money transfers initiated by consumers:

6

1.    Interdict recipients that have been the subject of any complaints about fraud-induced money transfers based on information provided to, or that becomes known by, Defendant;

2.    Identify, prevent, and stop cash-to-cash money transfers and cash reload money transfers initiated or received in the U.S. from being used as a form of payment by sellers or telemarketers, including, but not limited to, by:

   a.    Asking all U.S. consumers whether the money transfer is a payment for goods or services offered or sold through telemarketing;

   b.    Declining to process money transfers from U.S. consumers where the money transfer is a payment for goods or services offered or sold through telemarketing; and

   c.    Interdicting known sellers and telemarketers accepting money transfers as payments for goods or services offered through telemarketing;

3.    Provide a clear, concise, conspicuous and uncontradicted consumer fraud warning on the front page of all money transfer forms, paper or electronic, utilized by consumers in elevated fraud countries (based on

7

money transfers sent from those countries) to initiate money transfers using Defendant's system that includes, but is not limited to:

a.    A list of the most common types of scams that utilize Defendant's money transfer system;

b.    A warning that it is illegal for any seller or telemarketer to accept payments from U.S. consumers through money transfers for goods or services offered or sold through telemarketing;

c.    A notice to consumers that the money transfer can be paid out to the recipient within a short time, and that after the money is paid out, consumers may not be able to obtain a refund from Defendant, even if the transfer was the result of fraud, except under limited circumstances; and

d.    A toll-free or local number and a website for Defendant, subject to the timing requirements set forth in Subsection C.4, that consumers may call or visit to obtain assistance and file a complaint if their money transfer was procured through fraud;

4.    Make available in all countries in which Defendant offers money transfer services a website that consumers may visit to obtain assistance and file a complaint if they claim their money transfer was procured through fraud, *provided that* websites that are not yet

available shall be made available in accordance with the following schedule: (i) for countries determined to be elevated fraud countries, within six (6) months of entry of this Order; and (ii) for all other countries, within two (2) years of entry of this Order.

5.    Provide consumers who initiate or send money transfers via the Internet, telephone, mobile app, or any other platform that is not in-person, with substantially the same clear, concise, conspicuous and uncontradicted fraud warning required by Subsection C.3, *provided that* the warning may be abbreviated to accommodate the specific characteristics of the media or platform;

6.    Provide the required warning to consumers in the language used on the send form or other media type or platform used for the money transfer, in a form appropriate for the media or platform;

7.    Review and update the consumer warning as necessary to ensure its effectiveness in preventing fraud-induced money transfers; and

8.    Submit modifications to the warning, if any, to the Commission for review no less than ten (10) business days before any modified warning is disseminated to Western Union agents; p*rovided that* nothing herein shall prohibit Defendant from changing the nature or form of its service, send forms, or media or platform for offering

money transfer services or from seeking to replace its send forms with an electronic form or entry system of some type in the future.  In the event such changes are made, Defendant shall provide a consumer fraud warning substantially similar to that outlined in Subsection C.3 in a form appropriate to the media or platform;

D.   Failing to reimburse the principal amount of a consumer's money transfer and any associated transfer fees whenever a consumer or his or her authorized representative reasonably claims that the transfer was fraudulently induced and:

1.   The consumer or his or her authorized representative asks Defendant, the sending agent, or front line associates to reverse the transfer before the transferred funds have been picked up; or

2.   Defendant, after reviewing information and data relating to the money transfer, determines that Defendant, its agents, or the front line associates failed to comply with any of Defendant's policies and procedures relating to detecting and preventing fraud-induced money transfers when sending or paying out the money transfer by failing to: provide the required consumer fraud warnings; comply with Defendant's interdiction or callback programs; verify the recipient's

identification; or accurately record the recipient's identification(s) and other required biographical data;

E.  Failing to promptly provide information to a consumer, or his or her authorized representative, who reports being a victim of fraud to Defendant, about the name of the recipient of the consumer's money transfer and the location where it was paid out, when such information is reasonably requested; and

F.  Failing to establish and implement, and thereafter maintain, a comprehensive anti-fraud program that is reasonably designed to protect consumers by detecting and preventing fraud-induced money transfers worldwide and to avoid installing and doing business with Western Union agents who appear to be involved or complicit in processing fraud-induced money transfers or fail to comply with Defendant's policies and procedures to detect and prevent fraud (hereinafter referred to as "Defendant's Anti-Fraud Program"). Such program, the content and implementation of which must be fully documented in writing, and provided to the FTC, shall contain administrative, technical, and physical safeguards appropriate to Defendant's size and complexity and the nature and scope of Defendant's activities, shall be consistent with this Order's requirements, and shall include at least the following requirements:

11

1.  Performance of due diligence on all prospective Western Union agents and existing Western Union agents whose contracts are up for renewal;

2.  Designation of an employee or employees to coordinate and be accountable for Defendant's Anti-Fraud Program;

3.  Appropriate and adequate education and training on consumer fraud for Western Union agents and front line associates;

4.  Appropriate and adequate monitoring of Western Union agent and front line associate activity relevant to the prevention of fraud-induced money transfers;

5.  Prompt disciplinary action against Western Union agent locations where reasonably necessary to prevent fraud-induced money transfers;

6.  Adequate systematic controls to detect and prevent fraud-induced money transfers, including, but not limited to:

    a.  Imposing more stringent identification requirements for money transfers sent to, or paid out in, elevated fraud countries;

    b.  Holding suspicious money transfers at certain dollar thresholds to elevated fraud countries until Defendant has confirmed with the sender that they are not fraud-induced or has refunded the money to the sender; and

12

       c.    Ensuring that Western Union agent locations are recording all required information about recipients required by Defendant's policies or procedures or by law, including, but not limited to, their names, addresses, telephone numbers, and identifications, before paying out money transfers; and

7. Periodic evaluation and adjustment of Defendant's Anti-Fraud Program in light of:

       a.    The results of the monitoring required by Subsection F.4 of this Section and Section III of this Order;

       b.    Any material changes to Defendant's operations or business arrangements; or

       c.    Any other circumstances that Defendant knows or reasonably should know may have a material impact on the effectiveness of Defendant's Anti-Fraud Program, *provided that* Defendant shall notify the FTC in writing of the adjustments to Defendant's Anti-Fraud Program, and reasons for such adjustments, no more than thirty (30) days after any material modification to Defendant's Anti-Fraud Program has been implemented.

## II.

## DUE DILIGENCE ON PROSPECTIVE AND EXISTING WESTERN UNION AGENTS

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting, offering for sale, or providing money transfer services, are hereby restrained and enjoined from:

A.  Failing to conduct thorough due diligence on all persons applying to become, or renewing their contracts as, Western Union agents, including any sub-representative or subagent, to avoid installing Western Union agents worldwide who may become elevated fraud risk agent locations, including, but not limited to, by:

1.  Verifying government-issued identification;

2.  Conducting all reasonably necessary background checks (criminal, employment, or otherwise) where permissible under local law;

3.  Determining whether information or statements made during the agent application process are false or inconsistent with the results of Defendant's background checks or other due diligence;

4.  Taking reasonable steps to ascertain whether the prospective agent formerly owned, operated, had been a front line associate of, or had a

14

familial, beneficial, or straw relationship with any location of any money services business that was suspended or terminated for fraud-related reasons, as permitted by applicable laws and regulations (including foreign laws and regulations) and with the required cooperation from other money transfer companies;

5. Ascertaining whether the prospective agent had previously been interdicted by Defendant for suspicious activities or had been reported to Defendant as a recipient of fraud-induced money transfers;

6. Conducting an individualized assessment of the particular risk factors involved with each Western Union agent application and conducting all reasonably necessary investigative steps consistent with those risks; and

7. Maintaining information about Defendant's due diligence, including, but not limited to, information about the identities of the owners, their government-issued identifications, and the background check(s) conducted;

B. Failing to reject applications where Defendant becomes aware or reasonably should have become aware based upon its due diligence that the applicant, or any of the applicant's sub-representatives or subagents, presents a material risk of becoming an elevated fraud risk;

15

C.   Failing to ensure that the written agreements entered into with all new
     Western Union agents require them to comply with Section I.C.2 of this
     Order;

D.   Failing to ensure that all new Western Union agents have effective policies
     and procedures in place at each of the agent's locations to detect and prevent
     fraud-induced money transfers and other acts or practices that violate
     Section I of this Order;

E.   Failing to take reasonable steps to confirm that Western Union agents whose
     contracts are up for renewal are complying with the terms of their
     agreements with Defendant, including, but not limited to, by having
     effective policies and procedures in place to detect and prevent fraud-
     induced money transfers; and

F.   Failing to require all new Western Union agents, and existing Western
     Union agents, to: (i) disclose and update the identities of any sub-
     representative or subagent; and (ii) maintain records on the identities of any
     front line associates at their sub-representatives' or subagents' locations.

## III.

## MONITORING COMPLIANCE OF WESTERN UNION AGENTS

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents,
and employees, and all other persons in active concert or participation with any of

16

them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting, offering for sale, or providing money transfer services, are hereby restrained and enjoined from:

A.     Failing to provide appropriate and adequate ongoing education and training on consumer fraud for all Western Union agents, and other appropriate Western Union personnel, including, but not limited to, education and training on detecting, investigating, preventing, reporting, and otherwise handling suspicious transactions and fraud-induced money transfers, and ensuring that all Western Union agents and front line associates are notified of their obligations to comply with Defendant's policies and procedures and to implement and maintain policies and procedures to detect and prevent fraud-induced money transfers or other acts or practices that violate Section I of this Order;

B.     Failing to take all reasonable steps necessary to monitor and investigate Western Union agent location activity to detect and prevent fraud-induced money transfers, including, but not limited to:

1.     Developing, implementing, adequately staffing, and continuously operating and maintaining a system to receive and retain all complaints and data received from any source, anywhere in the world, involving alleged fraud-induced money transfers, and taking all

reasonable steps to obtain, record, retain, and make easily accessible to Defendant and, upon reasonable request, the FTC, all relevant information regarding all complaints related to alleged fraud-induced money transfers, including, but not limited to:

a.   The consumer's name, address, and telephone number;

b.   The substance of the complaint, including the fraud type and fraud method, and the name of any person referenced;

c.   The reference number, or Money Transfer Control Number, for each money transfer related to the complaint;

d.   The name, agent identification number, telephone number, and address of the sending agent(s);

e.   The date of each money transfer;

f.   The amount of each money transfer;

g.   The money transfer fee for each money transfer;

h.   The date each money transfer is received;

i.   The name, agent identification number, telephone number, and address of the receiving agent(s);

j.   The name, address and telephone number of the recipient, as provided by the recipient, of each money transfer;

k.  The identification, if any, presented by the recipient, and recorded, for each money transfer;

l.  All transactions conducted by the consumer bearing any relationship to the complaint;

m.  To the extent there is any investigation concerning, and/or resolution of, the complaint:

1.  The nature and result of any investigation conducted concerning the complaint;

2.  Any response to the complaint and the date of such response to the complaint;

3.  The final resolution of the complaint, the date of such resolution, and an explanation for the resolution; and

4.  If the resolution does not include the issuance of a refund, the reason for the denial of a refund;

2.  Taking all reasonable steps to identify Western Union agents or front line associates involved or complicit in fraud;

3.  Routinely reviewing and analyzing data regarding the activities of Western Union agent locations in order to identify the following:

a.  Agent locations that have processed transactions associated with two (2) or more complaints about alleged fraud-induced

19

money transfers, received by Defendant from any source, during a thirty (30) day period; and

    b.    Elevated fraud risk agent locations, as defined above; and

4.    For agent locations identified pursuant to Subsection B.3 of this Section, fully investigate the agent location by reviewing transaction data and conducting analyses to determine if the agent location displayed any unusual or suspicious money transfer activity that cannot reasonably be explained or justified, including, but not limited to:

    a.    Data integrity issues, including, but not limited to, invalid, illegible, incomplete, missing, or conflicting biographical data for consumers or recipients of money transfers;

    b.    Significant changes in the transaction patterns experienced at the agent location;

    c.    Significant differences in the transaction patterns experienced at an agent location relative to the patterns experienced at other agent locations in the same country;

    d.    Unusual demographic activity;

    e.    Irregular concentrations of send and/or pay activity between the agent and one or more other Western Union agent locations;

> f.    Irregular concentrations of send and/or pay activity between the agent and one or more geographical areas that have been identified as high risk for fraud;
>
> g.    Unusual transaction patterns by senders or recipients;
>
> h.    Flipping patterns;
>
> i.    Suspicious structuring or splitting of money transfers; or
>
> j.    Suspicious surfing patterns;

C.    Failing to take the following actions to prevent further fraud-induced money transfers, including, but not limited to, by:

> 1.    Suspending Western Union agent locations, as follows, pending further investigation to determine whether the Western Union agent locations can continue operating consistent with this Order's requirements:
>
> > a.    For agent locations identified pursuant to Subsection B.3.a of this Section, if the investigation of the agent location required by Subsection B.4 of this Section is not completed within fourteen (14) days after the agent location is identified, suspending the Western Union agent location's ability to conduct further money transfers until the investigation is completed; and

b.  For elevated fraud risk agent locations, immediately suspending the Western Union agent's ability to conduct further money transfers until the review required by Subsection B.4 of this Section is completed, *except that*, for a Western Union agent that is a bank or bank branch and otherwise subject to this immediate suspension requirement by virtue of fraud complaints about money transfers that are transferred directly into its account holders' bank accounts, Defendant shall comply with Subsection III.C.1.a. and also permanently block, or request that the Western Union agent block, all further money transfers to bank accounts for which Defendant has received any fraud complaint;

2.  Upon completion of the investigation, terminating, suspending, or restricting Western Union agent locations as follows:

a.  Terminating or suspending the Western Union agent location, or restricting the agent location's ability to send and/or receive certain money transfers, if the findings indicate that the Western Union agent location is not, or has not been, complying with Defendant's Anti-Fraud Program and other policies and procedures relating to detecting and preventing fraud-induced

22

money transfers, including, but not limited to, by failing to
collect and record required and accurate biographical
information about, and government-issued identifications for,
the recipients of money transfers; and

    b.    Terminating the Western Union agent location if the findings
indicate that the Western Union agent location or any of its
front line associates is, or may be, complicit in the fraud-
induced money transfers, has failed to comply with Section IV
of this Order, or has repeatedly failed to comply with
Defendant's Anti-Fraud and other policies and procedures
relating to detecting and preventing fraud-induced money
transfers;

3.    On at least a monthly basis, providing notice to all Western Union
agents in elevated fraud countries the substance of any complaints
Defendant received involving transactions processed by the agents'
locations; and

4.    Ensuring that all Western Union agents are enforcing effective
policies and procedures to detect and prevent fraud-induced money
transfers, or other acts or practices that violate Section I of this Order;
and

D.   Failing to establish adequate controls to ensure that, prior to paying out money transfers, Western Union agent locations are recording all required information about the recipients of money transfers, including, but not limited to, the recipients' names, addresses, telephone numbers, and identifications, and are taking reasonable steps to verify the identification presented by the recipients or, for money transfers that are directed to bank accounts, the identities of the account holders.

## IV.

## REQUIREMENTS FOR ELEVATED FRAUD RISK AGENT LOCATIONS

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting, offering for sale, or providing money transfer services, shall require and ensure that all elevated fraud risk agent locations that are still operating do the following for one (1) year from the date that Defendant identifies the agent as an elevated fraud risk agent location under the terms of this Order:

A.   For money transfers that are not transferred directly into a recipient's bank account,  photocopy or scan the identification documents or biometric

24

information presented by the recipient and retain the photocopies or images, along with the receive forms, for a period of five (5) years; and

B.    Demonstrate during compliance reviews or mystery shops, which Defendant shall conduct on at least a quarterly basis, that the agent location is complying with the requirements in this Section;

*Provided, however*, that if Defendant reasonably believes that complying with Subsection A of this Section for money transfers received by an elevated fraud agent location in a particular foreign jurisdiction would violate that jurisdiction's laws, Defendant may instead, upon notice to Commission staff, block all money transfers from the United States to that elevated fraud risk agent location or, with the agreement of Commission staff, take other appropriate action at that location to protect consumers from fraud.

## V.

## **SHARING COMPLAINT INFORMATION**

IT IS FURTHER ORDERED that, Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, shall, in addition to, or as a modification of, any other policy or practice that the Defendant may have, including Defendant's ongoing submission of information to the FTC for inclusion in the Consumer Sentinel Network ("Consumer Sentinel"):

25

A.   Provide notice to the consumer, or his or her authorized representative, at the time the Defendant is contacted with a complaint about alleged fraudulent activity associated with a money transfer, that (i) Defendant's practice is to share information regarding the consumer's money transfer and complaint with a database used by law enforcement authorities in the United States and other countries; and (ii) if the consumer does not want his or her name, address, and identification shared with law enforcement, Defendant will honor that request unless applicable law permits or requires Defendant to provide that information; and

B.   Regularly, but no more than every thirty (30) days, submit electronically to the FTC, or its designated agent, for inclusion in Consumer Sentinel, all relevant information Defendant possesses regarding complaints received from consumers, their authorized representatives, or any other source, anywhere worldwide, about alleged fraud-induced money transfers and regarding the underlying transfer itself, including, but not limited to, the information set forth in Section III.B.1.a through III.B.1.l. *Provided, however*, if Defendant receives a request from a consumer or the consumer's authorized representative, which is documented by Defendant, stating that the consumer does not want the information shared with the database, or if Defendant received the complaint from a source other than the consumer or

the consumer's authorized representative, Defendant shall submit to the FTC an anonymized complaint with the consumer's name, address, and telephone number redacted. *Provided, further*, that Defendant shall cooperate with the FTC in order to facilitate compliance with this Section.

## VI.

## INDEPENDENT COMPLIANCE AUDITOR

IT IS FURTHER ORDERED THAT an Independent Compliance Auditor ("ICA") shall be appointed to further ensure compliance with Sections I-V of this Order, as set forth below:

A.   Commission staff and Defendant shall select the ICA. The ICA shall be an independent third party, not an employee of the Commission or of Defendant. No later than thirty (30) days after entry of this Order, Defendant shall propose to a representative of the Commission three qualified, third-party candidates to serve as the ICA for Defendant as set forth in this Section. In the event that Commission staff is unable to select at least one acceptable ICA from the three candidates proposed by Defendant, Defendant shall propose another candidate within fourteen (14) days after receiving notice of the rejection. This process shall continue until an ICA is chosen. If within ninety (90) days after entry of this Order, the parties are unable to agree on a candidate who is willing and able to perform the ICA's

duties under this Order, they shall submit the matter to the Court for
determination.

B.    The ICA shall review, assess, and evaluate Defendant's compliance with
      Sections I-V of this Order;

C.    The ICA is authorized to choose, engage, and employ attorneys,
      investigators, accountants, appraisers, and other independent contractors and
      technical specialists, as the ICA deems advisable or necessary in the
      performance of the ICA's duties and responsibilities under the authority
      granted by this Order;

D.    The ICA shall have immediate, unfettered access to all information,
      documents, personnel, and premises in the possession, custody, or control of
      Defendant or any Western Union agent that the ICA deems necessary to
      carry out the ICA's duties pursuant to this Order; *provided that*, the ICA
      shall make reasonable efforts to avoid imposing upon Defendant undue costs
      and burdens; and *provided that*, if there is a dispute about the ICA's access
      to Defendant's or any Western Union agents' information, documents,
      personnel, and premises, after attempting to resolve the dispute without
      court action and for good cause shown, Defendant or the ICA may file a
      motion with this Court seeking appropriate relief;

E.    Defendant shall fully cooperate with and assist the ICA.  The cooperation and assistance shall include, but not be limited to, providing information to the ICA that the ICA deems necessary to be fully informed and discharge the responsibilities of the ICA under this Order, including proprietary information and trade secrets; providing any password required to access any computer, electronic file, or telephone data in any medium; and producing Defendant's financial records.  The parties agree that no attorney-client or other professional relationship shall be formed between the ICA and Defendant;

F.    The ICA shall prepare a budget and work plan as follows:

1.    No later than sixty (60) days after the date on which the ICA is retained by Defendant, the ICA shall, in consultation with Commission staff and Defendant, prepare and present to Commission staff and Defendant an annual budget and work plan (the "ICA Budget") describing the scope of work to be performed and the fees and expenses of the ICA and any professional staff to be incurred during the first year following the date on which the ICA is retained.

2.    The scope of work, fees, and expenses to be incurred by the ICA and any professional staff shall be reasonable and not excessive, in

light of the ICA's defined duties, responsibilities, and powers prescribed in this Order.

3.  The ICA shall prepare and submit to Defendant and to Commission staff an annual ICA Budget no later than ninety (90) days prior to the beginning of each subsequent year of the ICA's term.  If Defendant and Commission staff both approve the ICA Budget, the ICA shall adhere to and shall not exceed the approved ICA Budget, unless such deviations are authorized by agreement of the parties or order of the Court.

4.  Within twenty-one (21) days of receipt of any ICA Budget, either Commission staff or Defendant may serve an objection to the ICA, who, within twenty-one (21) days of such objection, shall provide to Commission staff and Defendant a revised ICA Budget or a notice that no such revision will be made.

5.  Following the ICA's response to an objection provided in accordance with Subsection VI.F.4 hereof, either Commission staff or Defendant may apply to the Court to modify the ICA Budget.

6.  Pending the Court's decision concerning any application pursuant to Subsection VI.F.5, the ICA shall continue to perform its duties and implement the ICA Budget as prepared by the ICA.

G.     Within one hundred eighty (180) days from the date of the engagement of

the ICA, and annually thereafter until the end of the ICA's term, the ICA

shall issue a report to Commission staff setting forth the ICA's assessment

of Defendant's compliance with this Order ("Report").  If, at any time, the

ICA determines that Defendant is not in substantial compliance with this

Order, the ICA shall notify Commission staff and consult with Defendant.

Defendant may submit to Commission staff and to the ICA a written

response to the ICA's notification;

H.     The Report and the contents thereof shall be treated as non-public material

pursuant to the Commission's Procedures and Rules of Practice.  The FTC

may share the Report and its contents with other law enforcement agencies,

including, but not limited to, the United States Department of Justice

("DOJ"), as permitted by the Commission's Procedures and Rules of

Practice;

I.     The ICA's term shall be three (3) years from the date on which the ICA is

retained by Defendant.  If the ICA resigns or is otherwise unable to fulfill his

or her obligations as set out in this Section, the process set forth in

Subsection N of this Section shall govern the selection of a new ICA;

J.     The ICA and all personnel hired by the ICA, including counsel to the ICA,

are entitled to reasonable compensation for the performance of duties

31

pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from Defendant's assets. The ICA shall provide Defendant with an accounting and a request for payment of reasonable compensation every six (6) months after the ICA is appointed, or at intervals deemed appropriate by the ICA;

K.   Defendant shall indemnify the ICA and hold the ICA harmless against all losses, claims, damages, liabilities, or expenses arising out of, or in connection with, the performance of the ICA's duties, including all reasonable fees of counsel and other reasonable expenses incurred in connection with the preparations for, or defense of, any claim, whether or not resulting in any liability, except to the extent that such losses, claims, damages, liabilities, or expenses result from gross negligence, willful or wanton acts, or bad faith by the ICA;

L.   In the event the ICA determines that the Defendant has failed to act consistently with the terms of this Section, the ICA shall notify the FTC and Defendant, and, for good cause shown, the ICA or the FTC may apply to the Court for appropriate relief, including for an extension of the ICA's term set forth in Subsection I of this Section;

M.   The ICA may, from time to time as may be made necessary by circumstances outside the ICA's control, such as by reason of the ICA's

32

temporary incapacity, family emergency, or natural disaster, appoint a temporary Acting ICA to act in the ICA's stead. The rights, duties, and obligations of the ICA under this Section shall apply equally to any such duly appointed Acting ICA, provided, however, that the period during which the ICA's role is filled by an Acting ICA shall not extend for longer than thirty (30) days;

N.   If the ICA is no longer willing or able to continue to serve, or if the Court relieves the ICA of his duties at the request of the FTC or Defendant, Commission staff and Defendant shall mutually agree on a replacement ICA. If the parties are unable to agree on a replacement ICA within sixty (60) days, they shall submit the matter to the Court for determination within ten (10) days thereafter. The overall term of the ICA set forth in Subsection I of this Section shall be extended commensurate with the length of the absence of the ICA; and

O.   In the event of the appointment of a replacement ICA, the replacement ICA shall have all the rights, powers, duties, and obligations of the ICA under this Order.

## VII.

## MONETARY JUDGMENT

IT IS FURTHER ORDERED THAT:

A.    Judgment in the amount of five hundred eighty-six million dollars ($586,000,000) is entered in favor of the Commission against Defendant as equitable monetary relief.

B.    Defendant shall satisfy the judgment in Subsection A of this Section by complying with the payment requirements set forth in Paragraph 7 of the Deferred Prosecution Agreement filed in *United States v. The Western Union Company*, 1:17-CR-00011-CCC (M.D. Pa. Jan. 19, 2017) ("DPA").

C.    Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and Paragraphs 7 and 8 of the DPA and may not seek the return of any assets;

D.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case;

E.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the

Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes;

F.   Defendant acknowledges that its Employer Identification Number, which Defendant must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701;

G.   All money paid pursuant to this Order and Paragraph 7 of the DPA shall be deposited into the DOJ or the Department of the Treasury Assets Forfeiture Funds. The FTC and DOJ intend to make the funds available to compensate the fraud victims described in the FTC Complaint and the DOJ Statement of Facts, as set forth in Paragraph 7 of the DPA. Defendant has no right to challenge any actions taken by DOJ, the FTC, or their representatives, pursuant to this Subsection; and

H.   No asset transfer required by this Order should be deemed, or deemed in lieu of, a fine, penalty, forfeiture, or punitive assessment. Defendant's satisfaction of the judgment through a payment pursuant to the DPA is not intended to alter the remedial nature of the judgment.

## VIII.

## ORDER ACKNOWLEDGMENT

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A.    Defendant, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury;

B.    For ten (10) years after entry of this Order, Defendant must deliver by electronic or other means a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of this Order, including, but not limited to, Western Union agents and employees who are involved in any way with consumer fraud complaints or who are involved in the hiring, training or monitoring of Western Union agents; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Defendant must send a copy of this Order to current personnel within seven (7) days of entry of this Order. For all others, delivery must occur before they assume their responsibilities; and

C.     From each individual or entity to which a Defendant delivered a copy of this

Order, that Defendant must obtain, within thirty (30) days, a signed and

dated acknowledgment of receipt of this Order. *Provided that*, in the event

that Defendant is unable to secure such acknowledgements from all current

Western Union agents, despite notice of this requirement, Defendant shall

retain proof of distribution of this Order to all current Western Union agents,

such as an electronic mail receipt, a certified mail receipt, or an affidavit of

service.

## IX.

## **COMPLIANCE REPORTING**

IT IS FURTHER ORDERED that Defendant make timely submissions to

the Commission:

A.     One (1) year after entry of this Order, Defendant must submit a compliance

report, sworn under the penalty of perjury, that:

1.     Identifies the primary physical, postal, and email address and

telephone number, as designated points of contact, which

representatives of the Commission may use to communicate with

Defendant;

37

2.     Identifies any business entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order;

3.     Describes in detail whether and how Defendant is in compliance with each Section of this Order, including, but not limited to, describing the following:

    a.     The number of Western Union agents, by country, identified by the procedures in Section III.B.3 of this Order;

    b.     The names, addresses, and telephone numbers of all Western Union agent locations that have been suspended, restricted, or terminated by Defendant for reasons related to fraud-induced money transfers, the dates of and the specific reasons for the suspensions, restrictions, or terminations, and, for Western Union agents that have been reactivated after suspension, the dates of the reactivations; and

    c.     Evidence showing that Defendant has and is complying with the requirements of Sections I through V of this Order; and

4.     A copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.     Annually, unless otherwise stated in this Subsection, for a period of ten (10)

years after Defendant's submission of the compliance report required by

Subsection A of this section, Defendant shall submit a compliance report,

sworn under penalty of perjury, that:

1.     Notifies the Commission of any change in any designated point of

contact within fourteen (14) days of the change;

2.     Notifies the Commission of any change in the structure of any entity

that Defendant has any ownership interest in or controls directly or

indirectly that may affect compliance obligations arising under this

Order, including: creation, merger, sale, or dissolution of the entity or

any subsidiary, parent, or affiliate that engages in any acts or practices

subject to this Order, within fourteen (14) days of the change;

3.     Describes in detail whether and how Defendant is in compliance with

each Section of this Order, including, but not limited to, describing the

following:

a.     The number of Western Union agents, by country, identified by

the procedures in Section III.B.3 of this Order;

b.     The names, addresses, and telephone numbers of all Western

Union agents that have been suspended, restricted, or

terminated by Defendant for reasons related to fraud-induced

money transfers, the dates of and the specific reasons for the

suspensions, restrictions, or terminations, and, for Western

Union agents that have been reactivated after suspension, the

dates of the reactivations; and

c.    Evidence showing that Defendant has and is complying with

the requirements of Sections I through V of this Order;

C.    Defendant must submit to the Commission notice of the filing of any

bankruptcy petition, insolvency proceeding, or similar proceeding by or

against Defendant within fourteen (14) days of its filing;

D.    Any submission to the Commission required by this Order to be sworn under

penalty of perjury must be true and accurate and comply with 28 U.S.C.

§ 1746, such as by concluding:  "I declare under penalty of perjury under the

laws of the United States of America that the foregoing is true and correct.

Executed on: _____" and supplying the date, signatory's full name, title (if

applicable), and signature; and

E.    Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to

DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service)

to:  Associate Director for Enforcement, Bureau of Consumer Protection,

Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington,

DC 20580. The subject line must begin: FTC v. Western Union.

## X.

## **RECORDKEEPING**

IT IS FURTHER ORDERED that Defendant must create certain records for

ten (10) years after entry of this Order, and retain each such record for five (5)

years. Specifically, Defendant must create and retain the following records:

A. Defendant's current written programs and policies governing the detection

and prevention of consumer fraud and the installation and oversight of its

agents, including, but not limited to, its Anti-Fraud Program;

B. Defendant's current policies and procedures governing consumer fraud

education or training provided to Western Union agents or other appropriate

personnel;

C. All Western Union agent applications, records reflecting due diligence

conducted by Defendant with respect to such applications, and with respect

to agents whose contracts come up for renewal, and written agreements

entered into with Western Union agents;

D. Records of all complaints and refund requests, whether received directly or

indirectly, such as through a third party, from any source, anywhere in the

world, about potentially fraud-induced money transfers, and any response,

including, but not limited to, the information listed in Section III.B.1 of this

Order;

E.      Records reflecting all steps Defendant has taken to monitor the activity of its

agents to detect, reduce and prevent consumer fraud, including, but not

limited to, records of Defendant's reviews, audits, or investigations of

Western Union agents associated with consumer fraud, communications

with such agents regarding consumer fraud matters, and any remedial action

taken against agents due to fraud;

F.      Copies of documents relating to compliance reviews or mystery shops

conducted by Defendant of elevated fraud risk agent locations pursuant to

Section IV of this Order; and

G.      All records necessary to demonstrate full compliance with each provision of

this Order, including submissions to the Commission.

## XI.

## **COMPLIANCE MONITORING**

IT IS FURTHER ORDERED that, for the purpose of monitoring

Defendant's compliance with this Order and any failure to transfer any assets as

required by this Order:

A.      Within fourteen (14) days of receipt of a written request from a

representative of the Commission, Defendant must:  submit additional

Case 1:17-cv-00110-CCC   Document 12   Filed 01/20/17   Page 43 of 46

compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69;

B.     For matters concerning this Order, the Commission is authorized to communicate directly with Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present; and

C.     The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

# XII.

## RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this

matter for purposes of construction, modification, and enforcement of this Order.

SO ORDERED this 20th day of _____January_____, 2017.

_____

UNITED STATES DISTRICT JUDGE

SO STIPULATED AND AGREED:

**PLAINTIFF FEDERAL TRADE COMMISSION**

Dated: January 19, 2017

KAREN D. DODGE (IL 6204125)
JOANNIE T. WEI (IL 6276144)
ELIZABETH C. SCOTT (IL 6278075)
Attorneys for Plaintiff
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
kdodge@ftc.gov (Dodge)
jwei@ftc.gov (Wei)
escott@ftc.gov (Scott)

**DEFENDANT THE WESTERN UNION COMPANY**

Dated: January 13, 2017

JOHN R. DYE
Executive Vice President and General Counsel

**COUNSEL FOR DEFENDANT THE WESTERN UNION COMPANY**

Dated: January 18, 2017

EDWARD B. SCHWARTZ (DC 429690)
Steptoe & Johnson LLP
Attorneys for Defendant
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6220 (telephone)
(202) 429-3902 (facsimile)
eschwartz@steptoe.com

45

_Sean Berkowitz_

Dated: <u>January 18, 2017</u>

SEAN M. BERKOWITZ (IL 6209701)
Latham & Watkins LLP
Attorneys for Defendant
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 777-7016 (telephone)
(312) 993-9767 (facsimile)
sean.berkowitz@lw.com

46